UNITED STATES DISTRICT COURT **03** FILED **12614 RGS**
FOR THE DISTRICT OF MASSACHUSETTS

2003 DEC 30 A 10: 00

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>              Plaintiff,<br><br>      v.<br><br>$16,257.08 IN U.S. CURRENCY;<br>$122.15 IN U.S. CURRENCY; and<br>ASSORTED JEWELRY,<br>           Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

**MAGISTRATE JUDGE** Bowler

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and (D), alleges that:

1.   This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345, 1355, and 1356.   Venue is appropriate pursuant to 28 U.S.C. § 1395.

2.   The _in Rem_ properties, seized from Shawn R. Pelley ("Pelley"), on the night of his arrest in New York, New York, on or about August 17, 2002, and seized during a search warrant executed in New York, New York, on or about August 20, 2002, more particularly described as:

- $16,257.08 in U.S. Currency ($140 of which was seized directly from Pelley, and the remaining $16,117.08 which was seized from the rented SUV that Pelley was driving);
- $122.15 in U.S. Currency;
- Silver or White Gold Gucci Watch (No. 0012056);
- Silver or White Gold Tiffany & Co. chain; and
- Silver or White Gold Cartier Bracelet (No. 750 19 L04701),

(collectively referred to as the "Defendant Properties"), are now

and, during the pendency of this action, will be within the jurisdiction of this Court.

3.    As outlined in detail in the Affidavit of FBI Special Agent Paul J. Fracassini, attached hereto as Exhibit A, and incorporated herein by reference, the United States has probable cause to believe that the Defendant Properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (D), as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1028 and/or 1029, and/or as property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of 18 U.S.C. § 1343.

WHEREFORE, the United States of America requests:

(1)   that a Warrant and Monition, in the form submitted, be issued to the United States Marshal for the District of Massachusetts, commanding him to:    (a) take custody of the Defendant Properties, and (b) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

(2)   that judgment of forfeiture be decreed against the Defendant Properties;

(3)   that thereafter the in Rem Defendant Properties be disposed of according to law; and

2

(4)   for costs and all other relief to which the United States may be entitled.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    _____
Jennifer H. Zacks
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Date: 12·30·03

## Verification

I, Paul J. Fracassini, Special Agent, Federal Bureau of Investigation, state that I have read the foregoing Complaint for Forfeiture in Rem and the attached Affidavit, and the contents thereof are true to the best of my knowledge, information, and belief.

_____
Paul J. Fracassini
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 22 day of December, 2003.

_____
Notary Public

My commission expires:

February 13, 2007

**FRANCES B. CAPANDONIS**
Notary Public, State of New York
No. 01CA5039308
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Feb. 13, 2007

## EXHIBIT A

## AFFIDAVIT OF SPECIAL AGENT PAUL J. FRACASSINI

I, Paul J. Fracassini, being duly sworn, depose and say:

1.   I am a Special Agent for the Federal Bureau of Investigation ("FBI"), and have been so employed for over six (6) years. Since I entered duty with the FBI, I have primarily been assigned to an external bank fraud squad.    I have specific experience and training in white-collar crime, including bank fraud, mail and wire fraud, and identity theft, and I have conducted numerous investigations of such crimes.    I have also assisted with the execution of several search warrants over the course of my work.

2.   I am familiar with the information contained in this affidavit because I have participated in the investigation referenced herein, have spoken with other law enforcement agents and other individuals, and have reviewed relevant documents related to this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause for forfeiture of the properties described below, I have not included herein the details of every aspect of the investigation.

3.   I respectfully submit this Affidavit in support of a Complaint for Forfeiture in Rem against the following properties, seized from Shawn R. Pelley ("Pelley"), on the night of his arrest in New York, New York, on or about August 17, 2002, and seized

1

during a search warrant executed in New York, New York, on or about August 20, 2002, more particularly described as:

- $16,257.08 in U.S. Currency ($140 of which was seized directly from Pelley, and the remaining $16,117.08 which was seized from the rented SUV that Pelley was driving);
- $122.15 in U.S. Currency;
- Silver or White Gold Gucci Watch (No. 0012056);
- Silver or White Gold Tiffany & Co. chain; and
- Silver or White Gold Cartier Bracelet (No. 750 19 L04701),

(collectively referred to as the "Defendant Properties").

4. Based on the facts set forth in this Affidavit, I have probable cause to believe that the Defendant Properties are subject to forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and (D), as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Sections 1028 and/or 1029, and/or as property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of Title 18, United States Code, Section 1343.

## THE INVESTIGATION

5. In the Spring of 2002, an investigator (the "Investigator") working for Fidelity Investment Company ("Fidelity"), a financial services company located in Boston, Massachusetts, informed me that in late April 2002, two unauthorized wire transfers were made from an account at Fidelity of a Fidelity customer who was an attorney in the Boston,

2

Massachusetts area ("Victim-1").  Specifically, I learned over a series of interviews with the Investigator, and by reviewing documents provided by the Investigator that:

a.    On or about April 25, 2002, Fidelity received a request for the transfer of approximately $41,500 from Victim-1's account to a Commerce Bank account in Victim-1's name.  The person who made this wire transfer request did so in person at a Fidelity branch in New York, New York (the "New York Fidelity Branch"), and presented a New Jersey State Identification Card and a Commerce Bank check card with Victim-1's name on them as proof of identification.  I received photocopies of the Identification Card and check card from Fidelity.  The person who made this wire transfer request also made a telephone call from the New York Fidelity Branch to a Fidelity call service center outside of New York State to authorize the sale of assets held in Victim-1's investment portfolio to generate liquidity for the requested wire transfer.

b.    On or about April 26, 2002, Fidelity received a request for the transfer of approximately $55,000 from Victim-1's account to a First Union Bank ("First Union") account maintained in the name "B.R.C. f/b/o [Victim-1] [Victim-1's birth date]".  I know from my experience and investigation that "B.R.C" is Broadwalk Regency Corporation, which owns and operates a casino located in Atlantic City, New Jersey, and that "f/b/o" in bank parlance means

3

"for the benefit of."  The person who requested this second wire transfer did so in person at the New York Fidelity Branch and presented a New Jersey State Identification Card and a Discover Credit Card (the "Discover Card") with Victim-1's name on them as proof of identification.   I received a photocopy of the Identification Card used for this second wire transfer from Fidelity.  The Identification Card used in the second wire transfer appears to be identical to the one used in the first wire transfer.

        c.      I spoke with the two Fidelity employees who processed the wire transfers on April 25, 2002, and on April 26, 2002, at the New York Fidelity Branch and showed them the New Jersey Identification Card.   They confirmed that the person depicted in the New Jersey Identification Card used in both transfers was the person who submitted the two wire transfer requests.

      6.    I subsequently contacted Discover Bank ("Discover"), which issued the Discover Card, and a Discover employee informed me that a duplicate Discover Card intended for Victim-1 had been sent to an address maintained at a Mail Boxes Etc. in New York, New York ("Mail Boxes Etc.").   I know from my experience that Mail Boxes Etc. is a business that provides, among other things, delivery addresses for mail and parcels.

      7.    I contacted Mail Boxes Etc., and an employee there informed me that the Mail Boxes Etc. address to which the duplicate

4

Discover Card was sent was registered to an account maintained under the name of another person ("Victim-2"). I also learned that a New Jersey State Identification Card with Victim-2's name and a credit card, issued by Citibank to Victim-2, were used as identification to open the account at Mail Boxes Etc. I received a photocopy of the Identification Card and the Citibank Credit Card used to open the account at Mail Boxes Etc. I believe that the individual depicted on the Identification Card with Victim-2's name that was used to open the Mail Boxes Etc. account appeared to be the same person depicted on the Identification Card with Victim-1's name that was used to make the two wire transfers from Fidelity.

8. I subsequently spoke with Victim-2 and learned that he is an engineer working in Massachusetts. Victim-2 informed me that his identity had been stolen and that he had filed a report with the United States Secret Service ("Secret Service") in Boston. I contacted the Secret Service agent investigating Victim-2's case, who informed me that the scheme I was investigating resembled the known *modus operandi* of a suspect in Victim-2's case, Shawn R. Pelley, who was under investigation for identity theft.

9. Through further investigation, including interviewing witnesses, speaking with other law enforcement officers, reviewing other documents, and comparing driver's license and state identification card photo images, I learned the following:

       a.        The United States Postal Inspection Service

("USPIS") was investigating Pelley, and had posted Pelley's picture on its web site. I retrieved Pelley's web picture and compared it with the picture on the New Jersey Identification Card used in the April 25, 2002, and the April 26, 2002, Fidelity wire transfers. I believe the pictures are of the same person.

b.     At the time, Pelley was wanted in approximately two states and by approximately four separate law enforcement agencies under various names. Some of the money transferred from Victim-1's Fidelity account on or about April 25, 2002, to the Commerce Bank account, was withdrawn through the issuance of approximately two checks made payable to two names under which Pelley was believed to have obtained driver's licenses and/or identification cards.

10.  Prior to the incidents described above, Pelley had fled supervised release in May 2001, about four weeks after he returned to Massachusetts at the completion of his prior incarceration on or about April 13, 2001. Between approximately May 4, 2001, and May 11, 2001, Pelley, using the identity of Peter Picknelly ("Picknelly") and a Massachusetts driver's license in that name, withdrew $52,900 from an account maintained by Picknelly at Fleet Bank in Boston. Pelley then fled Massachusetts and remained a fugitive for over a year. During the time Pelley was a fugitive, he traveled throughout various states in the United States, including California, Vermont, Florida, Massachusetts and New York.

6

During most of this time, Pelley was living and traveling with Francisco Cornejo ("Cornejo").

11. During Pelley's approximately fifteen months as a fugitive, he attempted to compromise, compromised, and/or attempted to steal approximately forty (40) identities. One of the schemes Pelley used repeatedly was to obtain a birth certificate in a victim's name (victim 1 and others), and obtain a driver's license and/or state identification card in the victim's name with Pelley's picture on the card. Pelley and/or his associate would also be obtaining credit reports of other individuals (victim 2 and others). Pelley would then add victim 1's name to the credit card account of victim 2. At this point, Pelley would call the various credit card companies and have a replacement card from victim 2's credit card account in the name of victim 1 overnighted to an address of Pelley's choice. Once the card was obtained, the card would be used by Pelley for cash and purchases. To avoid detection and apprehension, Pelley moved from one stolen identity to another to commit fraud, while living under another stolen identity.

12. On or about June 14, 2002, a Federal Grand Jury in the Southern District of New York returned a One-Count Indictment against Pelley for wire fraud, in violation of 18 U.S.C. § 1343, and a warrant was issued for Pelley's arrest. Copies of the Indictment and arrest warrant are attached as Exhibit A-1.

13. On or about August 17, 2002, investigators learned that

7

a fraudulently obtained credit card in an identity taken over by Pelley was being delivered by FedEx to the Waldorf Astoria Hotel in New York. Agents, a Postal Inspector, and Deputy Marshals arrested Cornejo on an outstanding arrest warrant from the District of Massachusetts after Cornejo picked up the credit card. Pelley was not with Cornejo at that time.

14.  Cornejo agreed to cooperate with New York agents and Deputy Marshals. Cornejo identified the hotel room at the Crowne Plaze where he and Pelley were staying and gave consent for agents to enter. He also provided a description of the rented SUV that Pelley was driving. Cornejo explained the methods that Pelley and Cornejo had used to steal identities.

15.  While this was taking place, Pelley phoned Cornejo to find out what was happening. At the request of agents, Cornejo convinced Pelley to meet him at the Crowne Plaza Hotel. Agents and Deputy Marshals staked out the Crowne Plaza Hotel and approached Pelley's vehicle when it arrived at the hotel. Pelley sped away, nearly striking a Deputy Marshal, before he crashed into several cars, and then fled on foot into the exit lanes of the Queens/Midtown Tunnel, where he was finally placed under arrest.

16.  Since approximately April of 2001, Pelley obtained more than $550,000 in cash and goods through his identity theft schemes. When he was arrested, Pelley was found to have some of the Defendant Properties in his possession, both in the vehicle that

8

Pelley was driving and in the hotel that he and Cornejo were staying in, which was rented under Cornejo's name. In addition, some of the Defendant Properties were seized in connection with the search warrant that was executed at the hotel room on or about August 20, 2002.

17. On or about November 4, 2002, this case was transferred to the District of Massachusetts *(United States of America v. Shawn R. Pelley*, Criminal Action No. 02-10364-RGS).

18. On or about December 19, 2002, Pelley pled guilty to one count of Wire Fraud, in violation of 18 U.S.C. § 1343. Pelley was sentenced on or about March 18, 2003 to sixty (60) months imprisonment, thirty-six months supervised release, and ordered to pay $96,500 in restitution to Fidelity Investments in Boston.

19. In conjunction with the guilty plea of Pelley, on or about March 18, 2003, Pelley also agreed to the forfeiture of the Defendant Properties, and waived any rights and interest he might have in the Defendant Properties. Attached hereto as Exhibit A-2, please find the letter that Pelley endorsed in which Pelley releases his rights and interest in the Defendant Properties.

20. Based on the facts set forth in this Affidavit, and the fact that Pelley had no legitimate source of income during the time that he was a fugitive, I have probable cause to believe that the Defendant Properties are subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (D), as property, real or

9

personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1028 and/or 1029, and/or as property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of 18 U.S.C. § 1343.

        Signed under the pains and penalties of perjury this _22nd_
day of _December_____, 2003.

                    _____

                    Paul J. Fracassini
                    Special Agent
                    Federal Bureau of Investigation

                               10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 02CRIM. 755

- - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA                    :

      - v. -                                    :        <u>INDICTMENT</u>

SHAWN R. PELLEY,                            :        02 Cr.

               Defendant.        :

- - - - - - - - - - - - - - - - - -X

## COUNT ONE

The Grand Jury charges:

1.   From on or about April 25 2002, up to and
including on or about April 26, 2002, in the Southern District of
New York and elsewhere, SHAWN R. PELLEY, the defendant,
unlawfully, willfully, and knowingly, having devised and
intending to devise a scheme and artifice to defraud, and for
obtaining money and property by means of false and fraudulent
pretenses, representations, and promises, to wit, a scheme to
defraud an account holder at Fidelity Investment Company of
approximately $96,500 through the use of unauthorized money
transfers, for the purpose of executing such scheme and artifice,
transmitted and caused to be transmitted by means of wire, radio,
and television communication in interstate and foreign commerce,
writings, signs, signals, pictures and sounds for the purpose of
executing such scheme and artifice, to wit, SHAWN R. PELLEY made

GOVERNMENT
EXHIBIT

A-1

a telephone call from a Fidelity Investment Company branch office in New York, New York to a Fidelity Investment Company call service center in Dallas, Texas.

(Title 18, United States Code, Section 1343.)

FOREPERSON

JAMES B. COMEY
United States Attorney

-2-

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### SHAWN R. PELLEY,

Defendant.

### INDICTMENT

02 Cr.

(18 U.S.C. § 1343.)

JAMES B. COMEY
United States Attorney.

A TRUE BILL

Foreperson.

CR 12 (Rev. 5/99)

**WARRANT FOR ARREST**    Ausa: Wilson Leung, 212-637-2401

| United States District Court | SOUTHERN DISTRICT OF NEW YORK | |
|---|---|---|
| UNITED STATES OF AMERICA | DOCKET NO.   02 CR 755 | MAGISTRATE CASE NO. |
| v. | NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED | |
| SHAWN R. PELLEY | SHAWN R. PELLEY | |
| WARRANT ISSUED ON THE BASIS OF: | | |
| ☐ Order of Court   ☐ Indictment <br> ☐ Information   ☐ Complaint | DISTRICT OF ARREST | |
| | CITY | |

TO: UNITED STATES MARSHAL OR ANY OTHER AUTHORIZED OFFICER

> YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the nearest available magistrate to answer to the charge(s) below.

**DESCRIPTION OF CHARGES**

WIRE FRAUD

| IN VIOLATION OF | UNITED STATES CODE TITLE <br> 18 | SECTION <br> 1343 |
|---|---|---|
| BAIL FIXED BY COURT | OTHER CONDITIONS OF RELEASE | |

| ORDERED BY <br><br> HON. FRANK MAAS <br> U.S. MAGISTRATE JUDGE | SIGNATURE (JUDGE/MAGISTRATE) | DATE <br> JUNE 14, 2002 |
|---|---|---|
| CLERK OF THE COURT <br> **JAMES M. PARKISON** | (BY) DEPUTY CLERK | DATE ISSUED <br> JUNE 14, 2002 |

**RETURN**

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED <br><br> DATE EXECUTED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| | | |



**U.S. Department of Justice**

*Michael J. Sullivan*
United States Attorney
District of Massachusetts

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 18, 2003

Michael C. Andrews, Esq.
21 Customs House
Boston, MA 02110

      Re:  <u>United States v. Shawn R. Pelley</u>
           02 Cr. 755 (LMM) (Southern District of New York)
           02-10364-RGS (District of Massachusetts)

Dear Mr. Andrews:

    In connection with the above-captioned matters and an
anticipated administrative or civil forfeiture action in this
district, this letter is to confirm that your client, Shawn R.
Pelley, agrees to the forfeiture to the United State Government,
waiving any rights and interest he might have, in the following
specified property seized from his person, his automobile, and
his hotel room upon his arrest in New York City on August 17,
2002 in connection with the above-captioned matters:

      1.    $16,257.08 (from person and Ford Explorer)

      2.    $122.15 (from hotel room)

      3.    Silver or white gold Gucci watch (No. 0012056)

      4.    Silver or white gold colored chain, Tiffany & Co.

GOVERNMENT
EXHIBIT
A-2
PENGAD-Bayonne, N. J.

5.    Silver or white gold Cartier bracelet (750 19 L04701)

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:    TIMOTHY Q. FEELEY
Assistant U.S. Attorney
(617) 748-3172

AGREED TO:

SHAWN R. PELLEY

Witness:

Michael C. Andrews, Esq.
Attorney for Shawn R. Pelley

Dated: March 18, 2003